Ludeling, C. J.
David Hasley died in January, 1873. He left a widow, a son and two grand children by a former marriage. His estate exceeded $60,000, and it was nearly all acquired during his marriage with the second wife. He left a will, by which he gave the usufruct of all his property to his widow, during her life, and he appoint *587 ed her Ms executrix. The will was probated, and Mrs. Hasley was confirmed testamentary executrix.
The heirs of Hasley then sued to have the will annulled, and by a judgment of this court the will was held to be valid. The heirs then sued to reduce the legacy to the disposable portion, and for the rendition of an account, and for a partition. There was judgment reducing the disposition in the will, and ordering an account. A provisional account was filed, which was opposed by the heirs. The opposition was maintained in part, and as amended, the account was homologated 5 a final account and a partition were ordered. Appeals were taken from both of said judgments, but no transcript of appeal has been filed in this court in either case, although the return day has long since passed.
The executrix then filed what she called her final account. In this account the executrix stated that she had claims against the estate of David Hasley for her paraphernal property, received and disposed of by Hasley during their marriage, which she proposed to present at a future time. The heirs filed oppositions to this account, and specially denied that she had any claims against .Hasley’s succession for paraphernal rights.
The case was then fixed for trial for the eleventh of May. On the tenth of May, the executrix filed what she termed an amended account, in which she set forth her claim for paraphernal property disposed of by her deceased husband, which had been alluded to in her original account. The trial of the oppositions commenced on the eleventh May, and on the thirteenth of May the heirs filed an opposition to Mrs. Hasley’s claim filed on the tenth of May. Objections were made to the filing of this opposition, on the grounds that it came too late, as the trial had been progressing two days, and because the re-conventional demand for the value of the ameliorations put upon her paraphernal property is not stated with sufficient particularity and certainty. The objections were overruled and a bill of exceptions was taken.
We think the judge a quo ruled correctly. If the accountant saw fit to file an amendment to her original account, it was but just that the opponents should have the right to oppose it, and for that purpose some delay was absolutely necessary, and within three days they filed their objections to it. The other objection is equally untenable. It was to the interest of all parties that an end be put to this litigation, and no injury could result to any one by permitting the amended opposition, if it be so regarded.
On the trial of the opposition the executrix pleaded res judicata to all items opposed, which figured on the provisional account. We *588 think the plea should be maintained. As already stated, the appeal taken from the judgment homologating the account was-never filed in this court, and that judgment is now conclusive. We have, therefore, confined our examination to the. objections urged to the judgment appealed from, which relate to matters not embraced in the provisional account; nor will we notice the criticisms of counsel, either on the form or want of completeness of the accounts.
The objections that the executrix has been guilty of dereliction of duty in not filing her final account, and in not collecting the assets of the estate, are not well founded. It appears from this record that almost from the opening of the succession, the executrix has been involved in litigations, which the heirs have instituted, and which necessarily delayed the close of her administration. As to the objection to her claim for credits for the notes returned, because she has novated them, it may be observed that she is the owner of one undivided half of all the assets of the succession, as partner in community, and she had, under the will, the usufruct of the other half during her life.y The changes that were made in the notes were manifestly for the interest of all interested in the succession, as, for instance, the interest on the notes were capitalized and new notes taken, with additional security, and others were made more secure by requiring a part thereof to be paid for an extension of time, and under circumstances which would have induced a prudent person to act in the same manner. Prom the evidence it appears that no injury to the heirs has resulted or is likely to result from the the acts of the executrix aforesaid; therefore they have no just cause to complain of said acts.
The objection to the sales of lands in section 43 to Hester, the Hasley Baptist Church, and Lemle, is inconsiderate, for the amount for which she accounts largely exceeds the inventoried value of said lands; nor can the sales be decreed to be null in this suit, as the vendees are not before us. The credit for account of T. C. Sfendifer & Co. is embraced in the provisional account homologated and will not be further noticed.
The objection’to item of $239 10 for marble slab over and iron railing around the grave of their ancestor, comes with a bad grace from ■ the heirs, who are enriched by his estate, even though the railing surrounds the grave of executrix’s first husband, whose property also enabled their ancestor to make the gains which they inherit. The deceased was entitled to decent burial; and the amount expended for funeral expenses, including the above, was very moderate, considering the condition of the estate.
The next opposition is to the fees of attorneys. The amounts allowed by the judge a quo seem to be conceded to be correct, except *589 the following: $750, for defending the suit of J. J. Hasley et al v. P. B. Hasley, executrix; $500, for defending suit to reduce the legacy and to account; $1446 94, commissions on $14,469 47, and $500 for this account.
The fee of $750 for defending the suit in which the validity of the will was attacked, is properly chargeable to the estate, and the amount is reasonable.
The fee for'defending the suit to reduce the legacy to the disposable portion and for an account, is not a proper charge against the estate. The testator having left forced heirs, the executrix might have learned from any member of the bar that the bequest of the usufruct of the whole of his property was reducible, and there was no necessity for defending such a suit, at least, by the executrix. If the legatee chose to defend it, she should pay a reasonable fee. This item was, therefore, improperly allowed as a credit.
The item of $1446 94 was opposed on the ground that no “professional services” were rendered in said collections, and that none were necessary, and that the charge is excessive for the services, if rendered. There is no proof in the record that such services were rendered, and the credit must be rejected.
The last item of $500, for this account, we think should be allowed. The executrix was bound to render a final account, and for the services of an attorney for that purpose, .a reasonable fee should be allowed. As already said, we do not consider that the executrix has been guilty of dereliction of duty, and the strenuous, and in many instances, unjust oppositions to the account, have increased the labors and consequently the fees of the attorney. The opposition to the credit claimed for commission due to the executrix should be maintained, and the credit allowed for $1378 59 should be rejected, as she is a legatee under the will. C. C. 1686. The credit claimed by the executrix for the interest of the Newman heirs, brought by Hasley, inventoried at $5225, is opposed. We think this opposition should be sustained.
L. Newman died in 1851, without forced heirs. By his will he gave his widow, the present Mrs. Hasley, the usufruct of his estate during her life, and to his brothers, sisters, and the children of deceased brothers and sisters, he gave his property, except some special legacies. After the marriage of David Hasley with the widow of L. Newman, Hasley bought the right or interest of all the heirs and legatees aforesaid, for the aggregate sum of $5225. These rights entered into the community then existing between D. Hasley and his wife, and at his death one-half thereof belonged to her in full ownership, and the other half belonged to his heirs, subject to her usufruct, created by *590 the will of Newman. The nalced property of this half interest in and to the property of L. Newman belongs to the heirs of Hasley, and she should be charged with its inventoried value, that is, $2612 50.
In relation to the sales made of property belonging to the Newman estate, the opponents contend that inasmuch as Mrs. Hasley owned the on& undivided half of the property, and the community owned the other half, that therefore, the community is chargeable only with the half of the price received for the property sold. That would be true, if the commwnity did own the undivided half of the property in full ownership. But we have seen that the community owned only the nalced properly to one-half of the estate. Consequently. the community owed her, in addition to the price of her half of the property, the value, whatever that may be, of the usufruct of the property sold. No confusion ever took place as to the usufruct of Mrs. Newman, as she never purchased the naked property; the community and she were distinct and separate persons. In the absence of other proof of the value of the usufruct of such property, we will consider the interest allowed by law for moneys due as the value of such usufruct; and this the accountant is entitled to in addition to the half of the price of said sales, which belonged to her. And she is further entitled to keep the $2612 50 in order to enjoy her usufruct thereon till her death, on giving security according to law. The items of $400 and $50, received from J.' R. Williams, $400 from Jack Bass, $1000 from E. Gross, etc., allowed by the judge a quo, were properly allowed under the evidence» The items for sales of logs to Bry & Essicks, and of cord wood sold to steamboats, etc., were also properly allowed. These charges are for the value of the timber standing on the separate lands of the wife at the time of her marriage, and afterwards cut and sold. The timber before being cut, belonged to the wife, and its value received by the husband, is a proper charge against the community; the logs and cord wood belonged to the community. We think the evidence authorized the allowance of the item of $4600, for money received by Hasley and loaned at interest, as a part of the estate of L. Newman.
The judgment of the court a qua gave the executrix five per cent, per annum interest on all the items allowed to her for paraphernal property disposed of by the husband. This is wrong. Interest should be allowed only from the dissolution of the community, as the interests before that period entered into the community. By law now, all debts bear five per cent, interest from their maturity, unless otherwise stipulated. These remarks apply to the separate property of the wife, except to the price of her usufruct on property of the Newman estate, sold as aforesaid. The interest on the price of the property subject to the usufruct, was her separate property, and did not form *591 part of the community, because it was not acquired during the community, the paid interest being the value or price of said usufruct; and the community owes said amounts received by him annually.
Having disposed of the objections made by the heirs to the judgment of the parish court on the claims of the widow, we will now proceed to dispose of the claims of the heirs for the ameliorations put upon the separate property of the wife. The court a qua allowed $3963 50 as the value of the improvements placed on the separate estate of the wife, and directed that one-half that sum, less her interest as usufructuary of one-fifth, to wit: $1585 be deducted from the sum allowed her for paraphernal property disposed of by the husband. The appellee has asked, to have the judgment amended by rejecting the demand of the heirs, and by allowing the accountant the item of $271 14, collected from Z. Johnson. This item appears to have been omitted in the opinion specifying the items of the accounts allowed, but the sum seems to have been added in the aggregate amount for which judgment was rendered. An examination of. the testimony of the witnesses, satisfies us that the-sum allowed by the judge a quo for the enhanced value of the property of the wife by the improvements placed thereon is too large.
J. P. Crosley says, “I don’t know but what I would rather have the land as Hasley took it than in the condition it was at the time of his death.” D. T. Head and Stamper, testify to the same effect.
There was a mill and gin placed on the lands, which are valued at from $1000 to $1500.
Crosley further testified as follows: “I would consider the Newman place, if at the death of Mr. Hasley, in 1873, it was in the same condition it was at the time of marriage in 1853, to have been worth about $5000. My opinion is that the Newman place, at the death of Mr. Hasley, in 1853, with all improvements thereon, inclusive of the mill property, was worth about $6000 or $6500.”
It is true-. a witness for the opponents says: “ I think, with the improvements put on it, the land was worth twice as much in 1873 as in 1853.” But he does not state whether any of this increased value was the result of time or not; and he adds: “ I would not know how to guess at the value of the land in 1873, as I am not much of a judge of the value of the lands; never owned much.” And again he testified that “ If the land was in the same condition in 1873 that it was in 1853, I don’t think I would make much difference in the valuation of it.” In another place he says : “ It is guess work with me.”
We fix the value of the improvements at $1500. This amount therefore is due by the widow to the community.
That portion of the judgment of the court a qua which prolongs the *592 administration of the executrix to collect the notes and judgments due to the estate is wrong. There are no debts due by the estate; the administration should be closed and the property should be turned over to those entitled to it as soon as possible.
It is therefore ordered and adjudged that the judgment of the parish court be amended and corrected in the particulars stated in the foregoing' opinion, and that as thus amended it be affirmed. It is further ordered that this ease be remanded to the lower court to the end that a final partition of the property of the estate of David Hasley, as fixed by the views and principles announced in the foregoing opinion, be made between the heirs and the surviving widow of David Hasley according to law. It is further ordered that the succession pay costs ,of this appeal.